NORTH ARKANSAS TELEPHONE COMPANY *v.* PETERS.

Opinion delivered May 13, 1912.

1.  TELEPHONE COMPANY—DUTY TO MAINTAIN WIRES.—Telephone com-
    panies must not only exercise reasonable care in the original location
    and construction of their lines, but must maintain them in such manner
    as to prevent injuries to persons using the highways over which they
    are constructed.  (Page 567.)

2.  SAME—LIABILITY FOR MAINTENANCE OF PRIVATE LINE.—Where a
    rural telephone customer constructed a telephone line from his resi-
    dence in the country to a point within the city limits, whereupon
    the telephone company connected his wire with the city exchange and
    gave him telephone service at the same rate it gave to its city sub-
    scribers, such rural line was constructed for the mutual benefit of the
    customer and the telephone company, and for a failure to maintain it in
    such manner as to prevent injuries to persons using the highway over
    which the line is constructed they will be jointly liable.  (Page 568.)

Appeal from Washington Circuit Court; *J. S. Maples,*
Judge; affirmed.

STATEMENT BY THE COURT.

This was an action brought by W. I. Peters against the
North Arkansas Telephone Company and W. L. Stuckey,
to recover damages for personal injuries received by him
while travelling along a public highway and alleged to have
been sustained by striking a telephone wire of said defendants,
which they had negligently allowed to sag or hang too low
across said highway.

W. I. Peters for himself testified substantially as fol-
lows:

At the time I was injured, I lived on the Rudolph farm
in Washington County, and the injury occurred about 8
o'clock in the evening on August 3, 1911. The injury oc-
curred upon my return from Elm Springs. In going there we
went by Johnson's, and came back the Elm Springs and Fay-
etteville road, because it was nearer. On my trip to Elm
Springs that morning I did not pass by the point where I
was injured that night. It was a dark cloudy night, and I
was travelling in a wagon, and my son was driving it. I was
sitting on the spring seat which was on top of the sideboards
and had the wagon bows and a sheet on the wagon. The
first I knew the wire caught me under the chin and lifted me

back.   I threw up my hand to ward it off, and it caught my
arm right here (indicating).   When the wire caught me, it car-
ried me back in the wagon.   I threw up my hands to release
myself from the wire, but was unable to do anything.   Three
of the bows of the wagon were broken and the telephone wire
broke.   I was injured at a point where a neighborhood road
runs into the Elm Springs and Fayetteville road, and was
travelling the latter road at the time I was injured.   My arm
pained me considerably, and several days afterwards I had
it examined by a physician, and it was ascertained that one
of the bones was broken.   Several days after I was injured
I went to the place in the road where I was injured, and traced
the telephone wire which injured me to the residence of the
defendant Stuckey.   *   *   *   The injury occurred on Thurs-
day night, and other evidence for the plaintiff tended to show
that the telephone wire in question was down on the ground
on the Sunday prior to the day on which the injury occurred.
That Mr. Sanders and Mr. Estep found the wire in this con-
dition, and tied it up as high as they could reach by standing
on the ground.

The evidence adduced by the defendants tended to show
the following state of facts:   The telephone company owned
and operated a telephone line within the corporate limits of
the town of Fayetteville.   The defendant Stuckey lived four
or five miles out in the country.   He applied to the telephone
company to have a telephone installed in his house.   It was
agreed between the parties that the defendant Stuckey should
construct a telephone line from his residence to a point at the
corporate limits of the city of Fayetteville, and that the tel-
ephone company would then connect his line with its wire
and install the telephone in the residence of Mr. Stuckey
and give him telephone service at the same rates it charged
its city subscribers.   This agreement was carried out.   No
inspection of the line constructed by Stuckey was made either
by himself or by the company.   When Stuckey could not
get communication with the central office in Fayetteville,
or whenever any of his neighbors reported that his line was
down, he would report that fact to the company, and the
company would send out a man to repair the line when he
was not engaged with the company's business in Fayetteville,

but would always wait until he could find an idle interval. The company had other rural subscribers, and the same course was pursued with them—that is to say, they would construct a line to the corporate limits at their own expense, and the telephone company would then connect it with its line and would install a telephone for the rural 'subscriber at the customary charges made to its city subscribers. Repairs made on all rural subscriber's lines were made at the cost of the subscriber, and no inspection was made by the company of their lines. The repairs were only made by the company when they were requested by the rural subscriber 'to make them and the company's employees could find time to do so.

There was a trial before a jury which resulted in a verdict for the plaintiff, and the defendant has appealed.

*George W. Dodd,* for appellant telephone company.

1. Neither of appellants is liable unless the wire which caused the injury was the property of said appellants or under their control, and, the telephone company having denied the ownership of the wire, the burden was on the appellee to prove that it owned or controlled the wire at the time of the injury before it could be held liable. 1 Thompson on Negligence, § 7659; 66 N. E. 508; 29 Cyc. 566.

2. The proof is that the telephone line was Stuckey's to the city limits, installed and maintained for his convenience and private use. The mere fact that the telephone company gave him switchboard connection and put him on the same basis with city subscribers is not sufficient to transfer the ownership of the line to the company, or to cast upon it the obligation of maintaining it.

3. The evidence is not sufficient to sustain a finding of negligence on the part of either appellant. The proof shows that there had been no interference with the service, and that neither defendant had any notice of the wire being sagged or down across the road so as to interfere with travel. 59 N. Y. S. 140; 42 App. Div. 321.

4. The evidence shows that the telephone company neither owns nor controls, nor is under any obligation, either express or implied, to maintain the wire whereby plaintiff was injured. On the contrary, it shows that the telephone

company never made any contract for the maintenance of the line and never assumed to maintain it under an implied contract.

*W. L. Stuckey, pro se,* and *E. S. McDaniel,* of counsel.

1. The evidence does not sustain a finding of negligence, and it will not be presumed from the mere happening of the accident. 79 Ark. 439; 82 Ark. 372.

2. Stuckey should not have been joined as defendant with the telephone company. The cases on rural telephones are scarce in this State. See 78 Ark. 426; 89 *Id.* 581, 590; 83 *Id.* 63; 87 *Id.* 190. The tying up of the wire was the proximate cause of the injury. Stuckey was guilty of no negligence, and had no notice.

*Walker & Walker,* for appellee.

1. The telephone company and Stuckey were jointly operating the line, and there was no error in the court's charge.

2. Telephone companies must not only exercise reasonable care in the original location and construction of their lines, but must maintain them so as to prevent injuries to persons using the highways. Jones on Telegraph and Telephone Companies § 185; 78 Ark. 426. Under the rule a *prima facie* case of negligence was made against both defendants.

3. Where a wire is strung across vacant lots, the company owes to persons accustomed to go there the same duty which it owes with respect to wires in the streets or highways. 89 Ark. 581.

4. *Res ipsa loquitur* is confidently asserted in this case, and overcomes any presumption of negligence. 7 Words & Phrases, p. 6137; 88 Md. 52; 59 N. E. 925; 66 Vt. 331; 109 N. Y. 297; 51 Ark. 495; 54 *Id.* 213; 57 *Id.* 418; *Ib.* 429; 89 *Id.* 581.

HART, J., (after stating the facts). The principal contention made by counsel for the telephone company is that the company did not own or control the telephone wire which injured the plaintiff, and was therefore not liable to him for any injury received by him on account of its negligent construction and maintenance. This question has given us the gravest concern. Counsel for the defendant have not cited

us to any cases applicable to the peculiar facts of this case, and, after a somewhat careful search for authorities bearing on the subject, we have not been able to find any.

The evidence in the case shows that, by agreement between the defendants, Stuckey constructed a telephone line from his residence in the country to a point at the city limits, and in consideration therefor the telephone company connected his wire with its city exchange, installed a telephone in his residence, and gave him telephone service at the same rate it gave its city subscribers. The line constructed by him was used by the telephone company to serve Stuckey at an agreed rental, and was used for no other purpose. When the line would get out of fix, the company at the request of Stuckey would send one of its servants out to fix it and would charge the expense to him.

Under these facts and circumstances, we are of the opinion that the telephone line was constructed by Stuckey for the mutual benefit and use of himself and the telephone company. The line was used by the telephone company to serve Stuckey as one of its subscribers, and he paid the customary rental therefor. The telephone wire which injured the plaintiff was constructed and used for the joint benefit of the telephone company and Stuckey, and it can not therefore be said that there is no evidence tending to show that the telephone wire which injured the plaintiff was not under the control of the defendant telephone company.

Telephone companies must not only exercise reasonable care in the original location and construction of their lines, but must maintain them in such manner as to prevent injuries to persons using the highway over which they are constructed; and, on a failure to do so whereby injury arises, they will be liable for all injuries resulting from such breach of duty. Jones on Telegraph & Telephone Companies, § § 185-189 *Jacks* v. *Reaves*, 78 Ark. 426.

The testimony shows that neither the telephone company nor the defendant Stuckey ever made any inspection of the line in question, and it had been in use for several years. The plaintiff testifies that he did not know that the wire was down, and at the time he was injured the night was dark and cloudy

so that he could not see it.   This evidence was sufficient upon which to base a finding by the jury that the defendant was negligent, and that the plaintiff was not guilty of contributory negligence.

The instructions given by the court fairly submitted these issues to the jury, and also the additional question whether the telephone company controlled and operated the line which injured the plaintiff.   The finding of the jury was in favor of the plaintiff, and we are of the opinion that the testimony was sufficient to support the verdict.   No objection was made by the defendant Stuckey to any of the instructions given by the court, and the only reason assigned by him why the judgment should be reversed is that he should not have been sued in the same action with the telephone company.

As we have already seen, the wire which injured the plain-tiff was constructed by Stuckey and owned by him; but was operated by the telephone company for the joint use and benefit of itself and Stuckey upon an agreement to do so. Hence they were joint tort feasors, and were properly joined in the action.

The judgment will be affirmed.