COTTON PLANT TELEPHONE COMPANY *v.* SHANK.

4-5661                                              134 S. W. 2d 532

Opinion delivered November 20, 1939.

*Robt. S. McGregor, W. W. Sharp, D. A. Bradham* and *Lee & Moore,* for appellants.

*Ross Mathis* and *W. J. Dungan,* for appellee.

McHANEY, J. Appellee was a tenant of appellant, S. M. Bush, for the year 1938, on a farm rented by Bush from one Arthurs for that year, Bush owns land which adjoins the Arthurs lands on the east and the Draper farm on the west, all being west of Cache river.

Prior to July, 1924, S. B. Wilson owned and operated an independent telephone property in Cotton Plant under the name of S. B. Wilson Telephone Company. Wilson was adjudged a bankrupt, and, at the sale of his property by the trustee in bankruptcy, Bush became the purchaser of his telephone property in Cotton Plant, including two other telephone exchanges and all property

of every nature and kind belonging to Wilson or the S. B. Wilson Telephone Company, and a trustee's deed was executed to him, dated July 31, 1934, but not acknowledged and approved by the referee in bankruptcy until November 14, 1934, at which time it was delivered. Just a month and one-half later, on December 29, 1934, Bush sold and conveyed by warranty deed all the telephone property he had bought at the bankrupt sale to appellant, Cotton Plant Telephone Company, hereinafter called the company, a newly-organized corporation, and since said date it has been the owner and operator of all the telephone property which had formerly belonged to Bush and Wilson. The deed from Bush to the company recites that they, Bush and wife, "do hereby grant, sell, convey, transfer and assign unto the Cotton Plant Telephone Company, its successors and assigns, all that certain telephone property formerly owned and operated by S. B. Wilson Telephone Company, consisting of three telephone exchanges," etc., enumerating a list of specific articles of property, and concluding, "and all other property of every kind and nature, belonging and appurtenant to said telephone exchange and long distance lines, whether enumerated or not."

Some years prior to 1924, Wilson had constructed a rural telephone line running west from Cotton Plant, across and west of Cache river, along the highway, which line ran by the Bush property and a few miles farther west to serve rural subscribers west of the Bush place. There is some testimony in the record by Mr. Graham that the company never did own that part of this line west of Cache river, but since the deed from Bush to the company passed whatever title Bush had to it, we think it conclusively established, and that it did own said line at that time. Telephone service was rendered to subscribers in that vicinity, but not at the house on the Bush place until 1929. The high water or overflow in the spring of 1927 washed this line west of Cache river down. The poles were down and the wire was on the ground, so that telephone service west of the river was discontinued. In 1929, 1930 and 1931, the Bush plantation was

under lease to Lewis Finney who, for his own convenience, early in 1929, rebuilt the telephone line between the Bush house and Cache river, and, by contract with the company, had this rebuilt or repaired line connected with the company's line east of Cache river, and the latter installed a telephone instrument in the house he was occupying, gave him telephone service and charged him $2 per month therefor. This monthly charge was billed to Bush who paid it for the account of Finney and charged him with it. When Finney moved out at the termination of his lease, the telephone service was continued in the Bush house for the benefit of him and his tenants until the spring of 1937, when the line was again washed down by the flood waters and was never repaired or rebuilt by anyone, although the company continued to bill Bush for the monthly rental which was paid by him until a short time after this suit was brought. On Halloween night, 1937, some pranksters picked up the wire of this line from the ground and stretched it across the highway in certain places. Travelers along the road cut the wire to get it out of the way and threw it to the side. No service was rendered over said line after said flood of January, 1937.

On February 1, 1938, appellee went into the Arthurs field which he had sub-rented from Bush, to cut cotton stalks with a stalk cutter, drawn by two mules. While cutting his first row of stalks, having driven from the south to the north side of the field, along which side the road and former telephone line pass, and while driving along the turnrow to turn on another row, he and the stalk cutter became entangled in a down telephone wire in such a manner that he was drawn into the machine, and he received painful and permanent injuries. He brought this action against both appellants to recover damages therefor, and alleged ownership of the line and negligence in failing to keep it in repair in both. Appellants separately defended the action on a general denial of the allegations of the complaint and affirmative pleas of contributory negligence. Trial resulted in a verdict and judgment against both appellants in the sum of $15,400. Hence, this appeal.

As to appellant Bush, the undisputed evidence in this record shows that he had no ownership of or interest in the line west of Cache river, or any other line for that matter, after December 29, 1934, the date of his deed to the company, and, therefore, had no duty resting upon him to repair same, unless by reason of the fact that his lessee, Finney, rebuilt or repaired the line in 1929, and that Bush thereafter got the use and benefit of such rebuilt line by accepting service over it and paying the monthly charges for such service. We cannot agree that such a result follows. Finney rebuilt the line at his own expense, contracted with the company in his own name for service, and accepted and paid for the service for nearly three years. True, Bush paid the bills, but for the account of Finney. It is also true that Bush continued to accept the service and pay the bills after Finney's lease expired, but the mere acceptance of service and payment of bills cannot have the effect of imposing the duty of repairing the line over which service is rendered in the absence of ownership or other obligation to maintain, neither of which exists in this case.

Neither was there any duty on the part of Bush to exercise ordinary care to furnish appellee a reasonably safe field in which to work. No duty of inspection was imposed on him by law. The relation of master and servant did not exist between them, but only that of landlord and tenant, and we know of no rule of law that imposes the duty on the landlord to clear the field of possible obstructions for the safety of the tenant. Of course, he could not set a trap to the injury of the tenant without responding in damages. Here, the landlord, Bush, was himself a tenant, renter or lesseee of Arthurs who owned the land. Under any view that may be taken of the matter, there can be no recovery as against appellant, Bush, and the court erred in refusing a directed verdict at his request.

As to appellant company a different situation exists. It did acquire ownership of the line west of Cache river by purchase from Bush, but it does not appear that its officers ever regarded it as the owner. Service was fur-

nished over the line to others than Bush up to the flood of 1927, when the line was washed down, and no service was thereafter had over said line until it was rebuilt by Finney in 1929. It never did assume active ownership by making repairs to the line. This is established by the testimony of Mr. Graham and Mr. Remley, manager and lineman respectively for the company, although Mr. Wilkerson testified he saw Mr. Remley working on the line two times in 1932. It is undisputed, in this record, that no service of any kind to any subscriber was rendered thereon after the flood of January, 1937, even though Bush inadvertently continued to pay for service until sometime in 1938. A toll ticket was introduced in evidence showing a toll charge over this line to a subscriber west of the Bush house, but the operator who introduced the ticket conceded that its date must be erroneous as she testified very positively that no service was rendered after the flood of 1937.

Another undisputed fact is that on Halloween night of 1937, the line being down and out of commission, pranksters further destroyed it by stretching the wire across the highway at different places, and that it was cut and thrown aside to get it out of the road by travelers thereon.

All of this is strongly indicative of an abandonment of any ownership it had in this line not later than 1927, and that such repairs as Remley made to the line in 1932 were for the account of some person other than the company.

The case of *North Arkansas Tel. Co.* v. *Peters,* 103 Ark. 564, 148 S. W. 273, is strongly relied on by counsel for appellee to justify recovery against both appellants. What we have already said, as to appellant Bush, disposes of this contention as to him. In that case, the telephone company operated a telephone exchange in the corporate limits of the city of Fayetteville. One Stuckey, who lived some four or five miles in the country, applied for service. It was agreed between them that, if he would build a line from his residence to the corporate limits of Fayetteville, it would connect his line with the

exchange, install an instrument in his residence and furnish him service for the same rate charged city subscribers. This was done. When this rural line would need repairs, by an arrangement between them, the lineman of the company would, at the company's convenience and at the expense of Stuckey, repair the line. Peters was driving along the highway in the night time in his wagon when he was injured by a sagging wire over the highway. He sued both and recovered a judgment. In affirming this judgment, this court expressed the "gravest concern" as to the liability of the telephone company. It was there said: "Under these facts and circumstances, we are of the opinion that the telephone line was constructed by Stuckey for the mutual benefit and use of himself and the telephone company. The line was used by the telephone company to serve Stuckey as one of its subscribers, and he paid the customary rental therefor. The telephone wire which injured the plaintiff was constructed and used for the joint benefit of the telephone company and Stuckey, and it cannot, therefore, be said that there is no evidence tending to show that the telephone wire which injured the plaintiff was not under the control of the defendant telephone company."

We think it would be an extension of the rule announced in that case with "gravest concern" to affirm the judgment against the company in this case, and we are unwilling to do so. There the line was down or sagging down over the public highway over which the public traveled, and the accident was one which could and should have been foreseen as likely to happen. Here the line was down in a field, and the accident that did occur was most peculiar and unusual. Even though, it could be said the company owned the line and was, therefore, under a duty to repair, it is difficult to perceive how it could have reasonably been foreseen that a stalk cutter would pick up this wire, and that appellee would get caught in it at the same time, be drawn into the machine and receive the painful injuries he did receive, not that it was necessary that the particular accident could be foreseen, but only some accident. There, the company did

assume to repair the line for Stuckey at his expense. Here, the company never undertook to keep the line in repair, except possibly on two occasions after it was re-built by Finney. It was out of use from 1927 to 1929, and again from 1937 to the time of trial without any repairing or rebuilding by it.

For these reasons and others we think there is no liability on the company for this most unusual and unfortunate accident, and that the court erred in refusing to direct a verdict for it at its request. The judgment will be reversed, and the cause dismissed as to both appellants.